# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1046

_____

| | | |
|---|---|---|
| Katie M. Bradley, | * | |
| | * | Appeal from the United States |
| Appellant, | * | District Court for the District |
| | * | of Nebraska. |
| vs. | * | |
| | * | |
| Sheila E. Widnall, Secretary of | * | |
| the Air Force, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 15, 2000
Filed: November 13, 2000

_____

Before RICHARD S. ARNOLD, Circuit Judge, BATTEY,[1] and MOODY,[2] District Judges.[3]

_____

BATTEY, District Judge.

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas, sitting by designation.

[3]Pursuant to 28 U.S.C. § 46(b), the Chief Judge certified the existence of a judicial emergency necessitating the designation of a panel consisting of fewer than two members of the Court of Appeals.

Katie M. Bradley (Bradley) appeals the district court's[4] order granting summary judgment to her employer, Sheila E. Widnall, Secretary of the United States Air Force, in this employment discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Bradley, who is an African American, alleges that the Air Force discriminated and retaliated against her in her employment duties and responsibilities and waged a campaign of discriminatory harassment against her from 1992 to the present. We affirm.

## FACTS

In April 1984, Bradley began her civilian employment with the United States Air Force (Air Force) at the Ehrling Bergquist Hospital (the Hospital) at Offutt Air Force Base in Nebraska. Bradley was a certified and licensed medical records administrator. In 1991, she was promoted and upgraded to a Medical Records Administration Specialist, GS-09. In August, 1993, she was temporarily suspended from her supervisory responsibilities as Director of Clinical Records due to poor performance. Upon the completion of her suspension, Bradley was detailed to the Utilization Management Branch of the Managed Care Division. Bradley vehemently opposed this reassignment. On January 10, 1994, and again on March 18, 1994, she filed several complaints with the Air Force Equal Employment Opportunity (EEO) officer challenging her reassignment on the basis of discrimination.

On May 24, 1994, Bradley and the Air Force entered into a written settlement agreement whereby she agreed to drop her discrimination complaints in exchange for reinstatement to her former position in the Medical Records Department. During this

---

[4]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

same year, however, the Air Force Surgeon General's Office implemented a reorganization plan at Air Force hospitals throughout the world, including Ehrling Bergquist Hospital.  As part of this process, Bradley's duties (as well those of many other civilian personnel) were restructured.  Upon her return to the department, direct supervision of her employees was detailed to Tsgt. Shawn Large (Tsgt. Large), a white female.  Under this new scheme, Tsgt. Large was to run day-to-day operations, while Bradley was to oversee Tsgt. Large, as well as another employee, Linda Jambard, also a white female.  Tsgt. Large was soon replaced pursuant to the restructuring program by Tsgt. Sharon Spicer (Tsgt. Spicer).  As before, Tsgt. Spicer was given direct supervisory authority over department employees and Bradley maintained supervisory authority over Tsgt. Spicer.

Shortly after her return, Bradley again contacted the EEO officer claiming to be a victim of discrimination, this time due to the restructuring of her position and her alleged mistreatment at the hands of supervisors and coworkers.  Major Norman Spector (Major Spector) served as Bradley's first line supervisor during much of 1994, though he was later replaced by First Lieutenant Matthew Escher (Lt. Escher).  Bradley alleges that each of these supervisors engaged in a campaign of racial discrimination resulting in a hostile work environment.  Specifically, Bradley asserts that Major Spector made various negative comments in her regard, removed much of her decision-making authority, encouraged her employees to bypass the chain of command, gave white employees preferential treatment, instructed employees to spy on her activities, had disparaging memos placed in her file, attempted to "set her up" to fail a hospital inspection, and generally treated her in a disrespectful and discriminatory manner.  Bradley also alleges that this pattern of behavior continued after Lt. Escher became her supervisor.

A review of the record below paints a somewhat different version of events.  Throughout the relevant time period, Bradley received superior performance evaluations from both Major Spector and Lt. Escher.  In addition, Bradley earned cash

bonuses and was even nominated for the Civilian Quarterly Award. She was sent to at least three job related conventions held around the country, and served on several hospital committees. Moreover, Bradley did not suffer a diminution in her position, salary, or benefits at any point, but rather continued to receive recognition and pay raises. The record also reveals that Bradley's department was replete with personality conflicts and personnel problems — many of which centered around Bradley herself. In an attempt to resolve these problems, Lt. Escher held a series of meetings with Bradley beginning in December, 1994. At these meetings, he and Bradley discussed their feelings on management policy, possibilities for future training, reassignment of personnel, and the need for open communication. Bradley was also reassured that she had full supervisory authority over Linda Jambard (an employee with whom Bradley had been having difficulties) just as she did before her 1993 suspension.

Nevertheless, based upon these events, Bradley filed three formal EEO complaints in April 1995, July 1995, and September 1996. Each of these complaints was investigated and culminated in a finding of no discrimination or retaliation. This conclusion was reaffirmed following a hearing before the EEOC, and later on appeal before the Director of the Air Force Review Boards Agency.

## DISCUSSION

The district court granted the Air Force's motion for summary judgment on all claims presented. On appeal, Bradley alleges that the district court erred in concluding that she had failed to establish a prima facie case of hostile work environment, retaliation, and disparate treatment. In addition, Bradley argues that the district court should not have limited its review of the evidence to the conduct that occurred after the settlement agreement and before the filing of the complaint.

We review the district court's decision to grant summary judgment de novo. See Fed. R. Civ. P. 56(c). Summary judgment is appropriate where, viewing the record in the light most favorable to the nonmoving party, no genuine issue of material fact

exists.  See id.  The movant bears the burden of proving that the facts are undisputed. See Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). While summary judgment should seldom be granted in discrimination cases because such cases often depend on inferences rather than direct evidence, see Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994), our review of the record in this case satisfies us that the district court's ruling was proper.

**Hostile Work Environment**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Title VII protects "more than 'terms' and 'conditions' in the narrow contractual sense."  Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)) (internal quotation omitted).  The Act is said to show Congress' intention to define discrimination in the broadest possible terms, and neither enumerates specific discriminatory practices nor defines the breadth of actionable illegal activities.  See Hall v. Gus Constr. Co., 842 F.2d 1010, 1014 (8th Cir. 1988).

In interpreting the scope of activities prohibited under Title VII, the Supreme Court instructs that hostile work environment harassment occurs when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (citations omitted). To establish a prima facie case of hostile work environment, Bradley must show: (1) she is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the

harassment and her protected-group status; and (4) the harassment affected a term, condition, or privilege of employment. See Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir. 1999). Bradley need not show that the Air Force knew or should have known of the harassment, however, because the majority of the conduct at issue in this case allegedly occurred at the hands of Bradley's supervisors.[5] See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 764-65, 118 S.Ct. 2257, 141 L. Ed. 2d 633 (1998) (holding that employers are vicariously liable for hostile work environment harassment perpetrated by a supervisor); Faragher, 524 U.S. at 807-08, 118 S.Ct. at 2292-93 (same). In rejecting Bradley's hostile work environment claim, the district court concluded that Bradley had failed to establish each of the prima facie elements enumerated above. We agree with the district court.

Bradley's allegations of harassment focus primarily on her interactions with supervisors, Major Spector and Lt. Escher. In this regard, Bradley alleges that her supervisory duties were curtailed, that she was left out of the decision-making process, treated with disrespect, and subjected to false complaints. Factors we consider when determining whether harassment is sufficiently severe or pervasive include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23, 114 S.Ct. at 371. While the conduct cited by Bradley may have resulted in a frustrating work situation, we do not believe that it was so severe or pervasive as to have affected a term, condition, or privilege of her employment. See Austin v. Minnesota Min., Mfg. Co., 193 F.3d 992 (8th Cir. 1999) (holding that the embarrassment occasioned by posting of derogatory flyer and distribution of plaintiff's test results were not sufficient

---

[5]In cases involving non-supervisor employees, there is an additional element: (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. See Carter, 173 F.3d at 700. While Bradley briefly alleges that non-supervisors Linda Jambard and Grace Hagedon where permitted to act in a disrespectful and insulting manner towards her, their conduct was not so severe or pervasive as to give rise to a claim of hostile work environment.

to establish hostile work environment claim); Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 965-67 (8th Cir. 1999) (observing that unpleasant conduct and rude comments were not so severe or pervasive as to have altered conditions of plaintiff's employment).

Bradley has also been unable to provide any evidence, either directly or by inference, beyond her own speculation, that her alleged mistreatment was due to her protected status. See Kneibert v. Thomson Newspapers, Mich. Inc., 129 F.3d 444, 455 (8th Cir. 1997) (party opposing summary judgment must provide sufficient probative evidence which would permit the court to rule in its favor rather than engaging in conjecture and speculation). To the contrary, close scrutiny of the record reveals that the majority of the problems encountered by Bradley stemmed from inter-office politics and personality conflicts rather than race based animus. Because Bradley was unable to provide any evidence of a nexus between the alleged harassment and her protected status, the district court correctly granted summary judgment on Bradley's hostile work environment claim.

**Retaliation**

Title VII makes it unlawful for an employer to discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliatory discrimination under Title VII, Bradley must show: (1) she engaged in statutorily protected activity; (2) an adverse employment action was taken against her; and (3) a causal connection between the two events. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc) (citing Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997)). In this case, the district court concluded that Bradley had failed to show, first, that she was subjected to an adverse employment action, and second, that the allegedly

adverse action was causally related to her statutorily protected activities. We agree.

An adverse employment action is exhibited by a *material* employment disadvantage, such as a change in salary, benefits, or responsibilities. See <u>Williams v. City of Kansas City, MO</u>, 223 F.3d 749, 753 (8th Cir. 2000) (citing <u>Scusa v. Nestle U.S.A. Co.</u>, 181 F.3d 958, 969 (8th Cir. 1999)). Bradley alleges that after the filing of her first EEO complaint in January 1994, her job duties were substantially curtailed, the number of employees under her direct supervision were reduced, her position as a hospital notary was taken away, her real authority over her employees within the Clinical Records Department was irreparably damaged, and white employee Linda Jambard was permitted to act at cross-purposes to her.

The record reveals that after her 1994 EEO complaint, Bradley was not terminated, demoted, reassigned, or transferred. Indeed, Bradley continued to receive outstanding performance appraisals, pay raises, and cash awards. While it is true that Bradley's supervisory duties were changed as a result of the Air Force's world wide hospital restructuring plan, her title as the Administrator of Clinical Records remained in place and she continued to have supervisory authority either directly or indirectly over a similar number of employees. "Changes in duties or working conditions that cause no materially significant disadvantage . . . are insufficient to establish the adverse conduct required to make a prima facie case." <u>Harlston v. McDonnell Douglas Corp.</u>, 37 F.3d 379, 382 (8th Cir. 1994). Without proof of requisite adverse employment action, the retaliation claim must fail. <u>See</u> <u>Scusa</u>, 181 F.3d at 969.

Even assuming Bradley could establish that she suffered an adverse employment action, she has failed to show that any of the alleged actions were causally related to her EEO complaints. She must do more than point to the temporal connection between the filing of her first complaint and the Air Force's allegedly adverse actions. "Generally, more than a temporal connection between the protected conduct and the

adverse employment action is required to present a genuine factual issue on retaliation." Scroggins v. University of Minnesota, 221 F.3d 1042, 1045 (8th Cir. 2000) (citing Kiel, 169 F.3d at 1136). The only evidence of a causal connection between the alleged adverse employment actions and the filing of Bradley's complaint is Bradley's affidavit in which she presents numerous conclusory allegations of retaliation. This is simply insufficient. See Flannery v. Trans World Airlines, Inc., 160 F.3d 425, 428 (8th Cir. 1998) (holding plaintiff unable to establish prima facie case of retaliation where plaintiff's affidavit was devoid of any specific factual allegations that, if credited by a trial jury, could support a finding of causal connection between alleged adverse actions and filing of complaint); Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997) (holding conclusory statements in affidavit, standing alone, are insufficient to withstand properly supported motion for summary judgment). In view of Bradley's inability to establish a prima facie case of retaliation, the district court decision as to this issue is affirmed.

**Disparate Treatment**

Title VII prohibits an employer not only from discharging an employee because of her race but also from treating an employee differently by reason of her race with respect to the "terms, conditions, or privileges" of employment. See 42 U.S.C. § 2000e-2(a)(1). Hence, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2111, 147 L. Ed. 2d 105 (2000). Because Bradley has been unable to establish that she was the object of an adverse employment action or that there was a causal relationship between her membership in a protected class and the alleged adverse action, her disparate treatment claim must also fail.

**Exclusion of Evidence**

Bradley challenges the district court decision to confine its consideration of the evidence to only a limited window of time. Specifically, the district court stated:

> My examination of the record for any alleged discriminatory treatment begins with this settlement agreement since the settlement agreement resolved the factual and legal issues between the parties that existed prior to May 1994. While the plaintiff claims that the defendant breached this settlement agreement, the plaintiff never brought suit over any alleged breach. Similarly, my examination of the record necessarily stops in October 1997 when the plaintiff filed her complaint.

Memorandum Opinion and Order of District Court at 2 n.1.

An examination of the May 1994 settlement agreement provides: "The parties agree that this agreement may be used as evidence in a later proceeding in which either of the parties alleges a breach of the agreement, but may not be used in any other action." Appendix at 52 (settlement agreement). We do not believe that this provision would necessarily preclude consideration of pre-settlement conduct of discrimination in a later case where the status of a current practice is at issue.

Further, the issue of the admissibility of discriminatory acts occurring following the filing of the complaint may logically be relevant. Certainly, there is no bright line rule requiring the inadmissibility of such evidence.

Nonetheless, we review the district court's decision for plain error, which is "narrow and confined to the exceptional case where error has seriously affected the fairness, integrity, or public reputation of the judicial proceedings." Des Moines Bd. of Water Works Trustees v. Alvord, 706 F.2d 820, 824 (8th Cir. 1983). Our review of

-10-

the record satisfies us that the decision of the district court in confining its review of the evidence to conduct which occurred after the settlement agreement and prior to the filing of the complaint was not plain error in this case.

## CONCLUSION

For the foregoing reasons, the decision below is affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.