**Denise E. WILDMAN, Plaintiff,**

v.

**BURKE MARKETING CORPORATION d/b/a Burke Corporation, an Iowa corporation, Defendant.**

No. 4–99–CV–90475.

United States District Court,
S.D. Iowa,
Central Division.

Nov. 16, 2000.

and, Count IV (Retaliation in Violation of the Iowa Civil Rights Act). Defendant requests summary judgment on all four counts. For the reasons discussed below, the Court will deny Defendant's motion as to all counts.

## I. Facts

On a motion for summary judgment, the Court is required to "view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences." *United States v. City of Columbia,* 914 F.2d 151, 153 (8th Cir.1990). The Court does not weigh the evidence or make credibility determinations. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The facts in a light most favorable to Plaintiff, the nonmoving party here, are as follows.

Plaintiff, Denise Wildman ("Wildman"), started working for Defendant, Burke Marketing Corporation ("Burke"), on March 2, 1998. Burke is a manufacturing facility that specializes in the custom manufacture of pork sausage pizza toppings. It hired Wildman to be a marketing manager. Soon after Wildman began her job, Burke required her to attend a pizza exposition in Las Vegas, Nevada. It is what happened at this exposition that forms the basis of Wildman's lawsuit.

Prior to leaving for Las Vegas, a female co-worker, Nancy Hobt ("Hobt"), warned Wildman that Burke's male employees have a history of harassing female employees and "partying." Hobt said that if Wildman did not like to "party," she would have a problem. Hobt told Wildman that she was glad Wildman was going to Las Vegas too, because she did not want to be the only female going.

Wildman left for the exposition on Monday, March 16, 1998, and the convention began on Tuesday, March 17th. After that first day at the exposition, Wildman rode back to the hotel with Burke employees Scott Miller ("Miller"), Michael Furr ("Furr"), Norm Gorder ("Gorder"), all re-

Anthony F. Renzo, Des Moines, IA, for plaintiff.

Frank B. Harty, Des Moines, IA, for defendant.

## MEMORANDUM AND ORDER

PRATT, District Judge.

The Court has before it Defendant's Motion for Summary Judgment (Clerk's # 11). Plaintiff alleges four counts in its Complaint: Count I (Sexually Hostile Environment in Violation of Title VII); Count II (Retaliation in Violation of Title VII); Count III (Sexually Hostile Environment in Violation of the Iowa Civil Rights Act);

gional sales managers, and Hobt. During the course of the car ride, Miller and Furr told sexually explicit jokes about President Clinton. Wildman did not laugh, and Hobt asked them to stop. Gorder yelled out the window of the car to young girls passing by, commenting on their breasts. Gorder then proceeded to make a series of offensive remarks displaying his animosity toward homosexuals. Wildman asked him to quit. Throughout the car ride, Burr injected the expletive "fucking" into the conversation at every possible chance.

When they arrived at the hotel, Wildman was invited to dinner with another Burke regional sales manager named Mercer Thompson ("Thompson"), Gorder, Hobt, and some Burke customers. After sitting down, Wildman asked if the group could move to the non-smoking section because of her asthma. Thompson became visibly angry and complained about the inconvenience of moving. Gorder also became angry and told Wildman that the party should not be reseated. The Burke employees then proceeded to drink alcohol throughout dinner, while Wildman did not. During dinner, Wildman learned that Thompson had bought tickets to the show "Splash." Plaintiff knew that the performers in Splash were topless. Nonetheless, Thompson insisted that Wildman go. When Wildman refused, Thompson once again became visibly angry.

On Wednesday, March 19th, Wildman attended the second day of the exposition. Upon Wildman's arrival at the exposition, Doug Cooprider ("Cooprider"), Wildman's supervisor, embarrassed and berated her for not attending "Splash" on Tuesday night. Wildman tried to explain to him that she refused to attend because of the show's sexually explicit nature, but Cooprider just shook his finger at her and refused to listen. Cooprider then refused to speak to Wildman for the remainder of the week. Also that day, while at the Burke exposition booth, Wildman witnessed a regional sales manager named Doug Canale ("Canale") and Tom Burke gawk at a

scantily dressed young woman and make offensive gestures mimicking the woman's actions.

At the end of the exposition on Wednesday, Wildman rode to the hotel with Miller, Gorder, Tony Taylor ("Taylor"), and Hobt. Taylor used the word "fucking" constantly throughout the car ride. Male employees resumed telling lewd sexual jokes. And Gorder cat-called out the window, yelling "Hey Sweetie!" to young girls.

At the exposition on Thursday, Canale told Wildman to wash the utensils used by Burke employees at the booth because it was her turn. He stacked Wildman's arms with as many utensils as he could, telling her that he wanted to keep things equal between them. It seems that Canale, Furr, and Taylor used the phrase "to keep things equal" several times throughout the week.

After closing down Burke's booth at the exposition on Thursday, Wildman rode back to the hotel with Burke employees for the last time. In the car with Wildman were Cooprider, Miller, Taylor, Canale, and two young male customers. Wildman was the only female in the van. Throughout the ride, male employees again used the expletive "fucking" incessantly. When Wildman could not stand to listen any longer, she asked the driver to let her out of the van at a shopping center instead of riding all the way to the hotel with the rest of the group.

Wildman returned from Las Vegas on Friday, March 20th. On Monday, March 23rd, she asked to speak with Cooprider, her supervisor, a couple of times. Cooprider finally agreed to meet with her at 11:00am. Before Wildman could say anything about what had occurred in Las Vegas, Cooprider fired her. When Wildman asked him why she was being terminated, Cooprider told her that it was because she did not "fit in" and that she did not have the right "chemistry." Wildman asked for more specific reasons, but Cooprider refused to give her any.

After Cooprider fired Wildman, she finally complained to him about what but occurred in Las Vegas. Wildman did not complain to Cooprider about the conduct of Burke employees before that, though it is important to note that Wildman claims that Cooprider refused to talk to her after she refused to attend "Splash." Nor did Wildman complain to Bill Burke, Burke's President, at the exposition, even though he asked her how she was doing at one point.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is "genuine," "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A fact is "material" if the dispute over it might affect the outcome of the suit under the governing law. *Id.*

The moving party has the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In meeting its burden, the moving party may support his or her motion with affidavits, depositions, answers to interrogatories, and admissions. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate the specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(c), (e); *Celotex Corp.*, 477 U.S. at 322–323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. In order to survive a motion for summary judgment, the nonmoving party must present enough evidence for a reasonable jury to return a verdict in his or her favor. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505.

The Eighth Circuit "has repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based.... Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir.1998) (citations omitted). "[S]ummary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991), *cited in Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1205 (8th Cir.1997)); *see Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). This is because "inferences are often the basis of the claim ... and 'summary judgment should not be granted unless the evidence could not support any reasonable inference' of discrimination." *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir.1999) (quoting *Lynn v. Deaconess Med. Ctr.-West Campus*, 160 F.3d 484, 486–87 (8th Cir.1998)).

## III. Discussion

Neither party differentiates the Iowa claims from their federal counterparts. Iowa courts follow federal Title VII analysis. *See Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 893 (Iowa 1990) (stating that, in the past, the Iowa Supreme Court has applied federal principles and analytic framework to cases under Iowa Code Ch. 216); *Hulme v. Barrett*, 449 N.W.2d 629, 633 (Iowa 1989) (stating that the court is guided by federal law in its analysis of civil rights cases brought under Iowa Code Ch. 601A); *Annear v. State*, 419 N.W.2d 377, 379 (Iowa 1988) (recognizing that Iowa Code Ch. 601A is patterned after Title

**1186**

VII). This Court will not therefore distinguish the hostile work environment claims and retaliation claims brought under Title VII from those brought under the Iowa Civil Rights Act.

### A. Hostile Work Environment

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex." 42 U.S.C. § 2000e–2(a)(1) (West 2000). This protection is not limited to the "terms" and "conditions" in the narrow contractual sense. *See Bradley v. Widnall*, 232 F.3d 626, 630 (8th Cir.2000) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)) (internal quotation omitted). Title VII "is said to show Congress' intention to define discrimination in the broadest possible terms, and neither enumerates specific discriminatory practices nor defines the breadth of actionable illegal activities." *Bradley*, at 630.

■ Hostile work environment harassment occurs "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations omitted). In order to establish a claim of hostile work environment sexual harassment where the conduct complained of was not all that of a supervisor, a plaintiff must establish the following: (a) she belongs to a protected group; (b) she was subject to unwelcome sexual harassment; (c) the harassment was based on sex; (d) the harassment affected a term, condition, or privilege of employment; and (e) the employer knew or should have known of the harassment and failed to take proper remedial action. *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 965 (8th Cir.1999) (cita-

tions omitted); *Carter v. Chrysler* Corp., 173 F.3d 693, 700 (8th Cir.1999). Defendant, Burke, seems to only take issue with whether the conduct of Burke employees in Las Vegas was sufficiently severe or pervasive enough to alter the conditions of Wildman's work environment and be considered abusive. Burke argues that Wildman only witnessed some immature and boorish conduct, that was not directed at her, and was short in duration.

■ "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris*, 510 U.S. at 23, 114 S.Ct. 367. These circumstances may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* And, to be actionable, the environment must be both objectively and subjectively offensive. *Stuart v. General Motors Corp.*, 217 F.3d 621, 631 (8th Cir.2000).

■ Whether Wildman's work environment was hostile or abusive is a close question. " 'There is no bright line between sexual harassment and merely unpleasant conduct....' " *Scusa*, 181 F.3d at 967 (quoting *Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir.1997)) (internal citations omitted). Wildman was subjected to constant use of the word "fucking," cat-calling, fellow employees gawking at girls, and lewd sexual jokes-almost all of which took place in the confines of an automobile, where Wildman was somewhat trapped. But, as Burke points out in its brief, Wildman was not subjected to unwelcome touching, she was not propositioned, she was not the object of sexual comments, and she was not leered at herself. Wildman was however pressured into going to a topless show and then chastised for not going. She was also subjected to things like having her arms overfilled with utensils and comments about keeping things equal, that tend to

link all the conduct together. The Court must look at the conduct and remarks in the aggregate, not piecemeal. *See Hathaway v. Runyon,* 132 F.3d 1214, 1222 (8th Cir.1997) ("A work environment is shaped by the accumulation of abusive conduct and the resulting harm cannot be measured by carving it 'into a series of discrete incidents.'") (citations omitted). The evidence submitted by Wildman gives the impression that the Burke trip to Las Vegas amounted to one continuous, sexually-charged environment.

Fortunately, the Eighth Circuit has provided this Court with the necessary guidance. In *Howard v. Burns Bros. Inc.,* 149 F.3d 835, 840 (8th Cir.1998), the court stated that "[o]nce there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury." In *Breeding v. Arthur J. Gallagher and Co.,* 164 F.3d 1151, 1159 (8th Cir.1999), the plaintiff proffered evidence that her supervisor continuously fondled his genitals in front of her and used lewd and sexually inappropriate language. The court held that a jury could find the conduct sufficiently offensive to have altered the plaintiff's working conditions, citing *Howard,* 149 F.3d at 840 ("Once there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury."). *Id.; see also Rorie v. United Parcel Service, Inc.,* 151 F.3d 757, 762 (8th Cir.1998) (holding that the court could "not say that a supervisor who pats a female employee on the back, brushes up against her, and tells her she smells good does not constitute sexual harassment as a matter of law"). The conduct of Wildman's fellow employees was plainly improper. And there does not seem to be much doubt that Wildman subjectively found the conduct to be offensive, as discussed in detail below. In light of *Howard, Breeding* and *Rorie,* the Court cannot say that as a matter of law Wildman's work environment was not sexually hostile or abusive.

## B. Retaliation

█ Title VII states that it is unlawful for an employer to fire an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a) (West 2000) To make out a prima facie case of retaliatory discrimination, a plaintiff must establish the following: (1) she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal connection existed between participation in the protected activity and the adverse employment action. *See Bradley,* at ——, 2000 WL 1689711, slip op. at 7; *Buettner v. Arch Coal Sales Co.,* 216 F.3d 707, 714 (8th Cir.2000). It is undisputed that Burke fired Wildman on March 20, 1998. What is disputed is whether Wildman engaged in an activity protected by Title VII and thus whether there could be a causal connection between that and Wildman's termination.

Wildman does not contend that she made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing related to Title VII. Rather, Wildman maintains that she opposed an employment practice made unlawful by Title VII. She argues that she "engaged in protected activity by abstaining from the lewd jokes, foul language, catcalls, and topless performances in Las Vegas." Pl.'s Br. in Supp. of Resist. to Def.'s Mot. Summ. J. at 14.

Unfortunately, the Eighth Circuit does not provide as much guidance on this issue as it did on Wildman's hostile work environment claims. The cases do seem to focus in on two requirements though. *See E.E.O.C. v. HBE Corp.,* 135 F.3d 543, 554 (8th Cir.1998) (stating that the plaintiff must prove he took some action against a discriminatory policy and that the action was based on a reasonable belief that the employer engaged in discriminatory con-

duct) (citations omitted). First, a plaintiff must oppose what she believes to be a discriminatory employment practice. *Id.* Second, her belief that the employment practice is discriminatory must be objectively reasonable. *Id.*

 While the Court is unsure about whether merely abstaining from certain activity is enough to constitute protected activity, it appears that Wildman did more than just not participate in the conduct of her fellow employees. *See generally E.E.O.C. v. Hacienda Hotel,* 881 F.2d 1504, 1514 (9th Cir.1989) (upholding the trial court's conclusion that the plaintiff engaged in protected activity where her opposition consisted of complaining to the general manager); *Walker v. Ford Motor Co.,* 684 F.2d 1355, 1360 (11th Cir.1982) (upholding the trial court's conclusion that the defendant was guilty of retaliatory discharge where the plaintiff's opposition consisted of complaints about racial slurs and a request for a transfer); *De Anda v. St. Joseph Hospital,* 671 F.2d 850, 856–858 (5th Cir.1982) (reversing the trial court's finding of no retaliation because the trial court failed to mention that the plaintiff resisted and reported a supervisor's effort to pay black potential employees less than white potential employees). Thompson made an issue of Wildman not going to "Splash" and Wildman actively resisted despite Thompson pressuring her. When Wildman had sustained enough, on the car ride to the hotel on the last day of the exposition, she made the driver let her out before getting to the hotel. Even more telling than these incidents in and of themselves is Burke's reaction to them. Cooprider berated Wildman for not attending "Splash." In fact, the reason Cooprider gave Wildman for discharging her was that she did not fit in. From the record, it certainly appears that Wildman's fellow employees considered her actions as opposition to their conduct.

The Court cannot say as a matter of law that Wildman was unreasonable in thinking that the conduct she protested and refused to participate in was discriminatory. Pressuring a female employee to attend a topless show with a group of male employees that had been drinking could amount to harassment in violation of Title VII. Moreover, Wildman's actions in getting out of the van before it got to the hotel on the last day of the exposition could be taken as a protest of the entire trip. As discussed above, the conduct of Wildman's fellow employees throughout the week, when taken in the aggregate, could reasonably be considered harassment.

The evidence would also easily support a conclusion that Burke fired Wildman because of her opposition to the conduct of its employees. Likewise, to the extent that Burke would offer the statements that Wildman did not fit in and did not have the right chemistry as a legitimate, nondiscriminatory reason for firing her, a reasonable juror could certainly find otherwise. *See Hocevar v. Purdue Frederick Co.,* 223 F.3d 721, 738 (8th Cir.2000) (stating that once the defendant advances a legitimate reason for the adverse employment action, the presumption of discrimination drops out and the plaintiff has the burden of demonstrating intentional retaliation). A reasonable juror could find that Cooprider's statements about Wildman not fitting in and not having the right chemistry merely reflected an animosity toward Wildman's opposition to the conduct of Burke's employees in Las Vegas. The Court therefore holds that a reasonable juror could find that Wildman opposed the conduct of her fellow employees, that she was reasonable in thinking the conduct violated Title VII, and that Burke's firing her was a reaction to her opposition of the employees' conduct.

## IV. Conclusion

Defendant's Motion for Summary Judgment (Clerk's # 11) is **denied** as to all counts in Plaintiff's Complaint.

**IT IS SO ORDERED.**