# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2059

_____

| | | |
|---|---|---|
| Joyce Jacob-Mua; Mee-Sook Kim; Ned Klopfenstein, | * <br> * <br> * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Ann Veneman, Secretary of the United States Department of Agriculture, | * <br> * <br> * | |
| Appellee. | * | |

_____

Submitted:  November 15, 2001

Filed:  May 8, 2002

_____

Before LOKEN, HEANEY and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Appellants Joyce Jacob-Mua (Jacob-Mua), Ned Klopfenstein (Klopfenstein), and Mee-Sook Kim (Kim) appeal the district court's grant of summary judgment in favor of the government.  The district court concluded appellants failed to present

prima facie cases of disparate treatment, hostile work environment, and retaliation. We affirm the opinion of the district court.[1]

## I.    BACKGROUND

The district court adopted the government's statement of undisputed facts, which we summarize here. Jacob-Mua is an African-American woman who worked from September 1993 until 1995 as a Technology Transfer Specialist at the Lincoln, Nebraska, National Agroforestry Center (Agroforestry Center or Center), which is part of the United States Department of Agriculture's (USDA) Forest Service. In 1995, Jacob-Mua requested and was granted a detail to the Federal Building in Lincoln because of alleged racial discrimination at the Agroforestry Center. Klopfenstein was a GS-12 Research Plant Pathologist with the Agroforestry Center from February 25, 1990, through November 1997, when he was detailed to a Moscow, Idaho, laboratory. He continues to work in Idaho as a GS-12 plant pathologist. Kim was a college graduate research student at the Agroforestry Center during all times relevant to the law suit. She worked with Klopfenstein on plant pathology research in Lincoln, and ceased her volunteer services at the Center when Klopfenstein was sent to Idaho.

Jacob-Mua alleges that throughout her employment at the Agroforestry Center she was subjected to her colleagues' racist comments, she was not given the technical support she needed to perform the duties of her job, and she was assigned data entry projects commensurate with the skills of an intern, not an employee with her level of experience. Jacob-Mua did not complain to her supervisor, Gerald Bratton (Bratton), that she had been experiencing race discrimination. Bratton claims he was not aware of any such discrimination until Jacob-Mua filed an employment discrimination complaint with the EEOC in May 1995.

---

[1]The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska.

In June 1995, Klopfenstein wrote a letter to the civil rights office for the USDA, copying the Lincoln Forest Service Office, and expressed concern about the office's intolerance of cultural differences. The agency informed Klopfenstein on September 5, 1995, that his job was unfunded and that the Forest Service would attempt to find him another position in the country. He was transferred to Moscow, Idaho, in November 1997. He claims as a result of his expression of concern about race relations in the office he was demoted, his laboratory was dismantled, he was transferred to Moscow against his wishes, he was denied promotion opportunities, and he was denied salary advances and fringe benefits. Klopfenstein did not suffer a loss in grade as a result of his transfer to Idaho.

In 1999, Jacob-Mua, Kim, and Klopfenstein filed an employment discrimination case against the USDA and various supervisors pursuant to Title VII of the Civil Rights Act, alleging discrimination based on sex, race, and national origin, and alleging retaliation. The district court granted summary judgment for the defendants because 1) the complaint named individual defendants rather than the agency or heads of the agency; and 2) Klopfenstein had not exhausted his administrative remedies. The court dismissed Kim's retaliation complaint because she was a volunteer and could not be considered an "aggrieved employee."

Jacob-Mua and Klopfenstein brought a second Title VII action in 2001, alleging race discrimination, hostile work environment, and retaliation. The defendants filed motions to dismiss or alternatively for summary judgment. Jacob-Mua's and Klopfenstein's opposing evidence was an affidavit by their lawyer purporting to identify attached documents including copies of affidavits and correspondence. The district court did not admit or consider the evidence offered by Jacob-Mua and Klopfenstein because the lawyer's affidavit was not made on personal knowledge and did not otherwise authenticate the documents attached.

The court granted summary judgment in favor of the defendants again because 1) Jacob-Mua failed to establish prima facie cases for her disparate treatment, hostile work environment, and retaliation claims; and 2) Klopfenstein failed to present enough evidence to establish a prima facie case of retaliation. Furthermore, the court concluded the USDA had presented legitimate, non-discriminatory reasons for its conduct on all counts, which plaintiffs failed to rebut.

## II. DISCUSSION

The district court's grant of summary judgment is reviewed de novo. Smith v. Ashland, Inc., 250 F.3d 1167, 1171 (8th Cir. 2001); Gentry v. Georgia Pac. Co., 250 F.3d 646, 649 (8th Cir. 2001). Summary judgment is appropriate where, viewing the record in the light most favorable to the nonmoving party, no genuine issue of material fact exists. See Fed. R. Civ. P. 56(c); Smith, 250 F.3d at 1171. Summary judgment should be cautiously granted in discrimination cases because such cases often depend on inferences rather than on direct evidence. Bradley v. Widnall, 232 F.3d 626, 630-31 (8th Cir. 2000) (citing Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994)).

### A. Kim's Retaliation Claim

We first address Kim's claim that the district court improperly dismissed her retaliation complaint because she was not an employee under the terms of the anti-retaliation provisions of Title VII. As a volunteer researcher for the Forest Service at the Agroforestry Center in Lincoln, Kim could not have been considered an employee for the purposes of bringing a Title VII claim. She was not paid, did not receive annual and sick leave benefits or coverage under any federal retirement program, and she was not entitled to merit promotion, holiday pay, insurance benefits, or competitive status. Additionally, in connection with her volunteer status, she signed an "Agreement for Individual Voluntary Services" which explained that her work would be noncompensable, and that she would not have the status of a federal employee.

-4-

Kim concedes she was a volunteer, but also claims the research she obtained for her dissertation was compensation, allowing her to be considered an employee. Case law does not support this conclusion. See Graves v. Women's Prof'l Rodeo Ass'n, Inc., 907 F.2d 71, 73 (8th Cir. 1990) (holding that compensation in some form is essential for an employer/employee relationship and prize money obtained by winning rodeo events was not compensation); O'Connor v. Davis, 126 F.3d 112, 116 (2d Cir. 1997) (holding that compensation is an essential condition in the employer-employee relationship). We affirm the district court's dismissal of Kim's claim because, as a non-employee, she did not have standing to bring a retaliation claim under Title VII.

## B.    Klopfenstein's Retaliation Claim

Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a claim of retaliation, Klopfenstein must show that 1) he filed a charge of harassment or engaged in another protected activity; 2) the employer subsequently took an adverse employment action against him; and 3) the adverse action was causally linked to his protected activity. Scusa v. Nestle U.S.A. Co., Inc., 181 F.3d 958, 968 (8th Cir. 1999).

Although Klopfenstein demonstrated his work at the Agroforestry Center was significantly disrupted, he has failed to show adverse employment action through a "material employment disadvantage, such as a change in salary, benefits, or responsibilities." Bradley, 232 F.3d at 632 (citations omitted). He alleges that he was demoted; transferred to Moscow, Idaho, against his wishes; denied promotion opportunities; denied salary advances and fringe benefits; and that his laboratory was dismantled. The uncontroverted evidence in the record shows, however, that his

-5-

position was marked for elimination in the ordinary course of business, he was offered a substitute position, and he did not suffer a loss in grade or pay when transferred to Idaho. The record also fails to show the USDA's proffered reasons for transferring Klopfenstein to Idaho were pretextual. The district court properly granted summary judgment to the government on this matter.

### C.    Jacob-Mua's Claims
#### 1.    Disparate Treatment Claim

Title VII prohibits an employer from treating an employee differently because of race with respect to the terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2(a)(1). To present a prima facie claim of disparate treatment, Jacob-Mua must show 1) she was a member of a protected group; 2) she was meeting the legitimate expectations of her employer; 3) she suffered an adverse employment action; and 4) circumstances give rise to an inference of discrimination, as similarly situated employees, who are not members of the protected group, were treated differently. Taylor v. Southwestern Bell Tel. Co., 251 F.3d 735, 740 (8th Cir. 2001); Whitley v. Peer Review Sys., Inc., 221 F.3d 1053, 1055 (8th Cir. 2000). The record does not support her claim that she suffered an adverse employment action.

"[A]n adverse employment action is exhibited by a material employment disadvantage, such as change in salary, benefits, or responsibilities." LaCroix v. Sears, Roebuck & Co., 240 F.3d 688, 691 (8th Cir. 2001) (citations omitted); see Bradley, 232 F.3d at 632. Jacob-Mua claims that because of her race she was given work assignments not commensurate with her skills, abilities, and job functions, given inferior equipment by her supervisors, denied attendance at a writing workshop, and denied a timely promotion. None of these allegations rise to the level of an adverse employment action. Her grade and pay increased during her course of employment with the Forest Service, she was allowed to work at the Federal Building upon her request, she was given permission to hire an intern to assist her with data entry, and she was granted three months unpaid leave of absence while she looked for

-6-

employment in Georgia. Because Jacob-Mua did not establish she was the object of adverse employment action, her disparate treatment claim must fail.

### 2. Retaliation Claim

As to Jacob-Mua's retaliation claim, we again agree with the district court that she has failed to show that adverse employment action was taken against her as the result of her statutorily protected activities under Title VII. The record is void of evidence indicating she suffered a change in salary, benefits, or responsibilities as a result of her 1995 EEOC complaint. Without proof of requisite adverse employment action, the retaliation claim must fail. See Bradley, 232 F.3d at 633.

### 3. Hostile Work Environment Claim

Hostile work environment harassment occurs when "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal citations omitted). To establish a prima facie case of hostile work environment harassment by non-supervisory co-workers,[2] Jacob-Mua must establish all of the following: 1) membership in a protected group, 2) the occurrence of unwelcome harassment, 3) a causal nexus between the harassment and her membership in the protected group, 4) the harassment affected a term, condition, or

---

[2]Although Jacob-Mua attempted to recast her claim as a supervisory hostile work environment claim at oral argument, the issue was explicitly framed as one of co-worker hostile work environment both in the pretrial order and the appellant's briefs. In the pretrial order, Jacob-Mua identified a claim for "disparate treatment because of her race, by supervisors," but her hostile work environment claim was directed solely against her co-workers. On appeal, Jacob-Mua's brief and reply brief discuss the hostile work environment claim only briefly, and no contention is expressed that her supervisors either created a hostile work environment or allowed one to exist. We decline Jacob-Mua's belated invitation to reinterpret her claim as one of supervisory hostile work environment harassment.

privilege of employment, and 5) the employer knew or should have known of the harassment and failed to take prompt remedial action. Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir. 1999). We need not examine the first four prongs, because Jacob-Mua's claim clearly fails on the fifth prong. She did not present evidence her employer knew or should have known of the harassment.

Jacob-Mua argues on appeal the facts supporting her claim of harassment are: 1) co-workers caused her to feel isolated in her work environment, 2) a co-worker yelled at her and threw keys at her, and 3) a co-worker asked her invasive questions about her race. As Jacob-Mua does not argue on appeal anything else in the record adds weight to her hostile work environment claim, we limit our analysis to the facts she asked this court to consider.

In order for Jacob-Mua's employer to be held liable for the racially harassing conduct of an employee, Jacob-Mua must show her employer knew or should have known of the conduct and failed to take prompt remedial action. Id. Jacob-Mua reported to her supervisor the incident in which a co-worker argued with Jacob-Mua, yelled at her, and threw keys at her. While the key-throwing incident may have been racially motivated, in Jacob-Mua's report of the incident to her supervisor, she did not declare, indicate, or even imply that the altercation had anything to do with race. The same co-worker who threw the keys also repeatedly asked Jacob-Mua invasive and arguably racial questions "about being black" such as "how often she "wash[ed] her hair," and "how much does it cost to braid [her] hair." This co-worker told Jacob-Mua "slavery wasn't all that bad" and repeatedly interrogated Jacob-Mua with offensive questions like "[W]hen are [you] leaving?" and "[W]hen are [you] going back to Africa?" However, Jacob-Mua never informed her supervisor or other management of these questions. She also did not present evidence her supervisors were aware of this harassment.

Evidence exists that, with respect to Jacob-Mua's hiring, Bratton stated "I have to accept a black woman as an employee that I don't even want." In a later coffee room conversation, on a work day when Jacob-Mua was wearing traditional African clothing, Bratton or another employee said, after Jacob-Mua left the room, "that was some dress," and each laughed. However, no evidence connects these comments to any hostile work environment created by Bratton or otherwise allowed to exist by the USDA.

During the relevant time period, Jacob-Mua never submitted any written or oral report to her employer indicating she was the victim of any racial harassment. Furthermore, the record does not indicate her supervisor or employer should have known of any racial harassment. Absent evidence in the record indicating her employer or supervisor knew or should have known of racially harassing conduct, Jacob-Mua does not have a viable co-worker hostile work environment claim.

## III.    CONCLUSION

For the reasons cited above, we affirm the district court's grant of summary judgment.


HEANEY, Circuit Judge, dissenting.

I respectfully dissent. Although I agree with the majority's well-reasoned opinion in Parts II A, B, C.1 and C.2, the evidence shows a dispute in material fact regarding Jacob-Mua's Title VII claim for hostile work environment harassment by non-supervisory co-workers. Such disputes must be resolved by a fact-finder. The record shows Jacob-Mua was singled out and treated in an unlawful manner among her colleagues because of her race. She presents credible evidence that the conduct was severe, pervasive, and related to her protected status, and that such conduct significantly altered the conditions of her employment. Furthermore, the evidence in

-9-

the record would allow a reasonable juror to conclude that her supervisors knew or should have known that Jacob-Mua was subjected to unlawful harassment that required prompt remedial action.

Because the majority determined that Jacob-Mua failed to allege a procedurally-sound supervisory hostile work environment claim, it focused solely on her co-workers' conduct. The court then concluded that Jacob-Mua did not present evidence that her supervisors were aware of the mistreatment she allegedly suffered at the hands of her co-workers. In coming to this conclusion it failed to view the facts in the light most favorable to Jacob-Mua.

The record shows that supervisors Rietveld and Bratton may have condoned co-worker Irwin's unlawful harassment of Jacob-Mua. When Jacob-Mua wore traditional African clothing, Irwin and Rietveld ridiculed her style of dress. When civil rights director Clarence Adair spoke to the members of the Agroforestry Center about racial discrimination in response to "the tensions that were building," Irwin and Rietveld publicly said the meeting was a waste of time and questioned why they were there. In addition, when Irwin threatened Jacob-Mua's physical safety, she reported his abusive behavior to Bratton, who informed her he was going to "let [the incident] slide" without further investigation. It is ludicrous to believe that Jacob-Mua's complaints of racial discrimination would have been handled properly by the very men who participated in the alleged unlawful behavior.

Furthermore, the record shows that the working environment at the Agroforestry Center was casual and informal. People worked with their office doors open, the majority of the employees socialized in the coffee room during their breaks, and conversations in the hallways and offices seem to have been commonplace. Irwin's and Isaacson's racially harassing behavior could not have gone undetected easily. Their conduct, combined with evidence that supervisors Bratton and Rietveld repeatedly failed to come to Jacob-Mua's defense when she was mistreated by her co-

workers, would allow a jury to infer that her supervisors knew or should have known of the alleged racial harassment, requiring immediate remedial action to correct the hostile work environment at the Agroforestry Center. I would therefore reverse the district court's grant of summary judgment on this matter and allow Jacob-Mua's hostile work environment claim to proceed to trial.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-