# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-4004

_____

| | | |
|---|---|---|
| Jeraldine Cole, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the Eastern |
| v. | * | District of Missouri. |
| | * | |
| The May Department Stores Company, | * | [UNPUBLISHED] |
| | * | |
| Appellee. | * | |

_____

Submitted: September 14, 2004
Filed: September 20, 2004

_____

Before MORRIS SHEPPARD ARNOLD, BRIGHT, and FAGG, Circuit Judges.

_____

PER CURIAM.

Jeraldine Cole, an African American, was initially employed by The May Department Stores Company in 1987 as a debt collector. She later became a training supervisor. In November 1994, Cole filed a discrimination charge alleging May had not given her a managerial title because of race discrimination. The charge resulted in a finding of "no probable cause," and Cole never requested a right to sue. May promoted Cole to training manager in January 1995, entitling her to a salary and executive benefits. Following May's consolidation of all its debt collection departments into one location in another city, May reassigned Cole to the new location. Her title, benefits, and pay did not change with the move. Cole took a

medical leave of absence from December 1995 to June 1996 for anxiety and depression, additional intermittent medical leave, and more leave to care for sick family members. In August 1998, Cole took a medical leave of absence to care for her seriously ill daughter and mother, who were both battling cancer, and to help care for her daughter's four children. Cole never returned to work. She applied for and received long-term disability benefits through November 2000. Cole contends she is still disabled, and May eventually dropped Cole from its employee rolls in November 2001, more than three years after she last worked.

Cole brought this employment discrimination action alleging that May retaliated against her for filing discrimination charges and that May constructively discharged her. The district court[*] granted summary judgment to May, concluding Cole failed to establish a prima facie case of retaliation or constructive discharge. On appeal, Cole contends there are genuine issues of material fact precluding the grant of summary judgment. Having reviewed the grant of summary judgment de novo and having drawn all reasonable inferences in Cole's favor, we conclude there is no genuine dispute of material fact and May is entitled to judgment as a matter of law. Jackson v. Flint Ink N. Am. Corp., 370 F.3d 791, 792-93 (8th Cir. 2004). We thus affirm the district court.

To establish a prima facie case of retaliation, Cole had to show she engaged in an activity protected by Title VII, she suffered an adverse employment action, and the existence of a causal connection between the protected activity and the adverse action. Id. at 797. Cole presents a long list of complaints that she believes shows adverse action by May, including her promotion to training manager at a salary below her total compensation the previous year, her failure to receive a promised review and

[*]The Honorable Frederick R. Buckles, United States Magistrate Judge for the Eastern District of Missouri, sitting by agreement of the parties.

pay increase soon after her promotion, and her failure to get an office after moving to the new location.

Having reviewed all of Cole's complaints, including some we need not discuss, we agree with the district court that Cole failed to show any adverse employment action. To show adverse action, Cole must establish "'a material employment disadvantage, such as a change in salary, benefits, or responsibilities.'" Tademe v. Saint Cloud State Univ., 328 F.3d 982, 992 (8th Cir. 2003) (quoting Bradley v. Widnall, 232 F.3d 626, 632 (8th Cir. 2000)). Although outright termination and other lesser actions that interfere with an employee's ability to do her job may satisfy the standard, "not everything that makes an employee unhappy is an actionable adverse action." Id. (internal quotations omitted).

In this case, when May promoted Cole to the managerial position in January 1995, Cole was taken off hourly pay and given a stable salary of $35,000. Although the salary was $1600 less than Cole earned in hourly pay and bonuses in 1994, Cole's bonuses fluctuated yearly. In 1993, for example, Cole earned only $32,700. Further, as a manager, Cole was eligible for other valuable executive benefits, including up to ninety days per year in sick pay and the option of participating in May's long-term disability plan. Indeed, less than a year after Cole became a manager, she took her first leave of absence, which lasted six months. She received a full ninety days of pay for that time, amounting to about $10,000, which she would not have received as an hourly employee. In addition, Cole began receiving long-term disability benefits in November 1998, and received the payments for two years. This substantial increase in managerial benefits offset the decrease in pay. Likewise, May's failure to raise Cole's salary a couple of months after she took the managerial position is not adverse employment action. Id. Indeed, the record shows Cole received her review and raise a few months later after May had moved the combined collections group to the new location. Cole also continued to receive regular raises and favorable reviews throughout the next three years. See id. Cole received a salary increase in 1997 to

$38,000, and another in 1998 to $42,500. Cole also complains about various actions of Joe Williams, the Vice President of Collections, but the alleged actions, such as moving Cole's cubicle near him, being rude, and failing to invite her to meetings, did not cause any material employment disadvantage. See LaCroix v. Sears, Roebuck & Co., 240 F.3d 688, 692 (8th Cir. 2001). Similarly, May's failure to give Cole an office at the new location did not impact Cole's ability to perform her job duties, and her increase in workload was a result of the consolidation.

We also agree with the district court that Cole failed to show any connection between the alleged adverse actions and her filing of a discrimination charge. Cole's starting managerial salary was higher than the salary paid to two white managers with more managerial experience than Cole. Further, the timing of Cole's promotion and her discrimination charge do not establish a causal connection between the promotion and the discrimination charge. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999). There is no evidence that anyone who was aware of the discrimination charge caused the delay in Cole's review or set her managerial salary. Williams's alleged remark that Cole's raise "went bye-bye" is no more than a stray remark by someone who did not make the challenged employment decision. Denesha v. Farmers' Ins. Exchange, 161 F.3d 491, 500 (8th Cir. 1998). Likewise, the person responsible for assigning offices did not know of Cole's discrimination claim.

To prevail on her constructive discharge claim, Cole had to show that May deliberately created intolerable working conditions with the intention of forcing her to quit, and that she did quit. Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1159 (8th Cir. 1999). After filing her discrimination charge, Cole continued to work for May for more than three years. Cole did not show any change in conditions that rendered the workplace more intolerable immediately before she left on her last leave of absence. See Jones v. Fitzgerald, 285 F.3d 705, 716 (8th Cir. 2002). Cole's increased workload was simply a result of the consolidation and the need to train many people at the new location. Although Cole may have been unhappy with May's

business decisions, her working conditions were not so bad that a reasonable person would resign. Instead, the evidence shows Cole did not return to work because of tragic family circumstances. In late 1998, Cole's doctors indicated Cole was suffering significant stress because she was the only caretaker for her terminally ill daughter, her daughter's four children, and her invalid mother. The doctors indicated Cole's condition was not due to injury or sickness arising out of her employment.

Having concluded Cole failed to establish a prima facie case of retaliation or constructive discharge, we affirm the district court's grant of summary judgment to May.

_____