200 F.Supp.2d 1109 (2002)
Hazel CLARK, Plaintiff,
v.
Anthony J. PRINCIPI, Secretary of Veterans Affairs, Defendant.
Nos. 4:01-CV-218 SNL, 4:01-CV-867 ERW.
United States District Court, E.D. Missouri, Eastern Division.
March 19, 2002.
*1110 Hazel Clark, St. Louis, MO, pro se.
Audrey G. Fleissig, Suzanne J. Gau, Office of U.S. Atty., St. Louis, MO, for defendant.

MEMORANDUM
LIMBAUGH, Senior District Judge.
Pro se plaintiff has filed this consolidated employment discrimination action alleging that she was denied light duty assignment in the dental service division on the basis of her race and in retaliation for prior EEOC complaints (4:01CV218SNL); and that upon an earlier reinstatement to her present position as a dental hygienist (pursuant to the resolution of one of her prior EEOC complaints) she was denied a promotion from a GS-7 Dental Hygienist position to a GS-8 Dental Hygienist position and/or promotion to an Expanded Function Dental Auxiliary Status position on the basis of her race and in retaliation for prior EEOC complaints (4:01CV867ERW). This matter is before the Court on the defendant's motion for summary judgment (directed to both cases) (#22), filed February 14, 2002. Plaintiff has filed in response to the summary judgment motion a pleading entitled Plaintiff's Statement of Uncontroverted Material Facts Opposing Defendant's Motion *1111 in Summary Judgment (# 29), filed March 6, 2002. This pleading is unaccompanied by any memorandum of law or any exhibits.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). However, although "summary judgment should seldom be granted in employment discrimination cases", Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir.1994), summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of his or her case. Helfter v. U.P.S., 115 F.3d. 613, 616 (8th Cir.1997) citing Bialas v. Greyhound Lines, Inc., 59 F.3d 759, 762 (8th Cir.1995). With these principles in mind, the Court turns to an examination of the facts.
For ease of understanding and judicial efficiency, the facts (as determined by this Court) will be set forth separately for each of the plaintiff's complaints.[1]

*1112 Case No. 4:01CV218SNL

Plaintiff is currently employed by defendant as a Dental Hygienist at the Veterans Affairs Medical Center (VAMC) in St. Louis, Missouri. Her present position is classified as a GS-7 Dental Hygienist. Plaintiff is currently on non-duty status as a result of an on-the-job injury claim. During all relevant time-periods, plaintiff's direct supervisor was Lawrence E. Scheitler, M.D., Chief of Dental Services.[2]
On or about March 30, 1994, plaintiff allegedly injured her back while assisting a patient from a wheelchair into a dental chair. Ignoring her pain, plaintiff continued her duties and said nothing about the incident to anyone in the dental service. On May 2, 1994 plaintiff first visited defendant's Personnel Health Service for the alleged injury on March 30, 1994. After examination, plaintiff was given written instructions that she return to work on light duty status from May 2, 1994 through May 9, 1994 with restrictions. Defendant's Exhibit 4. Plaintiff's restrictions precluded her from pulling, pushing, kneeling, and bending; and furthermore, severely limited her in the areas of continuous sitting, standing, stooping, or twisting. Finally, she was precluded from lifting more than ten pounds (10lbs). Given these restrictions, plaintiff was unable to perform her normal and regular duties, including but not limited to, lifting patients in and out of their wheelchairs, lifting the x-ray machine up and down to accommodate patients in wheelchairs, lifting and placing a 45lb lead apron over patients (for x-rays), and extended periods of standing and stooping while working with patients.
Plaintiff returned to the dental service and gave her light duty notice to Dr. Scheitler[3]. Although plaintiff professed to be in pain, she did not request at that time any type of accommodation from Dr. Scheitler. Plaintiff finished her regular shift on May 2, 1994 and saw patients on May 3, 1994 on a normal working basis without adherence to any of the restrictions placed upon her by the Personnel Health Service. Plaintiff did this without any consultation with Dr. Scheitler or anyone else in the Dental Service. Defendant's Exhibit 2EEOC transcript, pgs. 22-23.
A(Plaintiff Clark): I saw patients on May 2 and May 3 on a normal working basis without any restrictions, without any reduced amount of time, whatever.
Q: Now, part of your duties as a dental hygienist, during part of those times you're standing and part of those you're sitting, is that correct?
A: Yes.
Q: So you just continued performing your regular duties?
A: I continued to perform my regular duties using my better judgment in terms of not trying to hurt myself any more, or to endure any more pain, shall I say.
Q: And the pain that you were experiencing that caused you to go to Employees *1113 Health it continued on through May 2 and also May 3, is that correct?
A: Yes, it did.
Defendant's Exhibit 2EEOC transcript, pg. 23.
Upon receipt of plaintiff's light duty assignment notice, Dr. Scheitler consulted with other Dental Service personnel and determined that no light duty positions currently existed within Dental Service. He contacted Ms. Catherine Brockmann, Personnel Management Specialist for assistance in locating a light duty position for the plaintiff. Although a June 7, 1991 internal VA memorandum regarding the availability of light duty assignments at the VAMC listed two openings in the Dental Service, Dr. Scheitler informed Ms. Brockmann that these positions were already filled and that plaintiff would not have had the qualifications for these positions anyhow. Defendant's Exhibit 2 EEOC transcript, testimony of Dr. Scheitler, pgs. 234-238; testimony of Catherine Brockmann, pgs. 293-94; Defendant's Exhibit 6June 7, 1991 Light Duty Assignments memorandum.
Ms. Brockmann then began a search for a light duty position for plaintiff. She began calling the divisions as listed on the June 7, 1991 memorandum. When she reached the Environmental Management Services (EMS) division, she was informed that EMS could accommodate plaintiff in the Linen Room. Ms. Brockmann decided to place plaintiff in this position and so informed Dr. Scheitler. Dr. Scheitler did not object to Ms. Brockmann's decision. Defendant's Exhibit 2EEOC transcript, testimony of Brockmann, pgs. 295-96. Dr. Scheitler agreed to the reassignment because he felt it would be convenient for plaintiff due to the Linen Room's proximity to the dental area plaintiff normally worked, and he further believed that it would be of help to the Dental Service to have their linens already folded when delivered to the Dental Service.[4] Defendant's Exhibit 2EEOC transcript, pgs. 239-40.
Effective May 4, 1994 plaintiff was assigned to the Linen Room as a light duty assignment accommodation. Her direct supervisor in the Linen Room was Robert Gunter. He was aware of plaintiff's restrictions and believed that she could be accommodated because the items to be folded were already on a table and there were chairs available for sitting at the table while folding. Defendant's Exhibit 2EEOC transcript, testimony of Robert Gunter, pgs. 130-36. Plaintiff claims that when she arrived at the Linen Room on May 4, 1994 the items to be folded were on the floor in a bag and there were no chairs readily available; thus, she was required to stand for long periods of time. Defendant's Exhibit 2EEOC transcript, pgs. 64-70. She further claims that despite being in pain she did not say anything to Mr. Gunter or anyone else in the Linen Room nor return to Personnel Health Services to complain about her light duty assignment. Plaintiff never asked for a chair or bench to sit on while folding or for assistance to place the alleged bag of items to be folded on the table. Defendant's Exhibit 2EEOC transcript, pg. 66.[5]
*1114 On May 5, 1994 plaintiff returned to the Linen Room but left after approximately one and one-half (1 1/2) hours. She went to Personnel Health Services complaining of back pain and was sent home.[6] She did not return to work again until May 9, 1994 when she returned to Dental Services to resume her regular duties as a Dental Hygienist. Defendant's Exhibit 2EEOC transcript, testimony of plaintiff, pgs. 39-40.
The Court has reviewed the legal memorandum, affidavits and exhibits submitted by the defendant in support of his motion for summary judgment. The defendant has met his initial burden to demonstrate that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Once the defendant has met his burden, the burden shifted to the plaintiff to "set forth affirmative evidence, specific facts, showing that there [was] a genuine dispute on [those] issue[s]." City of Mt. Pleasant v. Associated Electric Coop., 838 F.2d 268, 274 (8th Cir.1988). The plaintiff's Statement of Uncontroverted Material Facts does not meet her burden. She does not offer any specific facts which demonstrate a genuine dispute of any particular material fact issue. There is no material factual dispute regarding the events of May 2 through May 5, 1994. Her factual evidence regarding accommodations within the Dental Service to other white employees consists of speculations, unsubstantiated allegations, and negative character assessments of Dr. Scheitler. Consequently, after review of the factual evidence provided mainly by the defendant, the Court accepts the defendant's account of the factual background giving rise to plaintiff's claim as contained in Case No. 4:01CV218SNL and will now consider the applicable law.
Plaintiff's Title VII claims arise from her belief that she should have been assigned light duty in Dental Services. She specifically claims that there were two light duty positions she could have performedreceptionist or control clerk. She further contends that several white employees were given light duty assignments in Dental Services and that she was not given one because of her race and prior history of filing EEOC complaints. Upon review of the record before the Court, the Court finds that plaintiff cannot establish a prima facie case of race discrimination as to her light duty assignment nor a prima facie case as to her claim of retaliation.
A plaintiff in a Title VII race discrimination case can proceed in one of two ways. Stacks v. Southwestern Bell Yellow Pages, 996 F.2d 200 (8th Cir.1993). When a plaintiff produces direct evidence, such as statements by decisionmakers clearly showing that race was a motivating factor in the employment decision; or at least significant circumstantial evidence showing a specific link between the discriminatory animus and the challenged employment *1115 decision, the burden-shifting standards established by Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), come into play. Stacks v. Southwestern Bell Yellow Pages, 996 F.2d. at 201 n. 1; Beshears v. Asbill, 930 F.2d 1348, 1353 (8th Cir.1991). In the absence of such evidence, the guidelines set forth in McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) are applicable. Stacks v. Southwestern Bell Yellow Pages, 996 F.2d. at 202; Johnson v. Minnesota Historical Society, 931 F.2d 1239, 1242-43 (8th Cir.1991); Halsell v. Kimberly-Clark, 683 F.2d 285, 289 (8th Cir.1982), citing, Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), cert. den., 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983). Since plaintiff has failed to produce direct evidence or specific circumstantial evidence of race discrimination, the Court will analyze plaintiff's discrimination claims under the McDonnell Douglas standard.
McDonnell Douglas, supra., established a three-part analysis for Title VII disparate treatment cases. Under McDonnell Douglas, a Title VII plaintiff must first establish a prima facie case of intentional discrimination by a preponderance of the evidence. If the plaintiff successfully establishes a prima facie case of intentional discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. If the defendant employer meets this burden of production, the plaintiff employee must show by a preponderance of evidence that the articulated reason(s) for the challenged employment action are pretextual and that the illegitimate criterion was the motivating reason. At all times the plaintiff employee possesses the ultimate burden of proving to the Court that s/he was the victim of intentional discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); Ghane v. West, 148 F.3d 979, 981 (8th Cir.1998); McCullough v. Real Foods, 140 F.3d 1123, 1126-27 (8th Cir.1998); Rose-Maston v. NME Hospitals, 133 F.3d 1104, 1107-08 (8th Cir. 1998); Rothmeier v. Investment Advisers, 85 F.3d 1328, 1332 (8th Cir.1996); Ruby v. Springfield R-12 Public School Dist., 76 F.3d 909, 911-12 (8th Cir.1996); Favors v. Fisher, 13 F.3d 1235, 1237-38 (8th Cir. 1994); see also, Carter v. St. Louis University, 167 F.3d 398, 401 (8th Cir.1999).
A prima facie case of disparate treatment concerning an employer's alleged failure to offer workplace accommodations similar to those offered white employees requires plaintiff Clark to show, among other things, that she suffered an adverse employment action and some evidence of a discriminatory motive behind that action (in the present case, the contention that plaintiff was treated differently than similarly situated white employees). See, Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1016 (8th Cir.1999); Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1108-09 (8th Cir.1998). Plaintiff Clark has failed to make a prima facie case of disparate treatment concerning her light duty assignment because she has failed to show that she suffered an adverse employment action, and also failed to show that she was treated differently from similarly situated white employees within Dental Services.
An adverse employment action must have a materially adverse impact on the terms or conditions of the plaintiff's employment. Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 684 (8th Cir.2001); Bradley v. Widnall, 232 F.3d 626, 632 (8th Cir.2000); Kerns, at 1016. An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. Cooney, et. al. v. Union Pacific Railroad Co., 258 F.3d *1116 731, 734 (8th Cir.2001) quoting Spears v. Missouri Dept. of Corrections and Human Resources, 210 F.3d 850, 853 (8th Cir. 2000). Termination, reduction in pay or benefits, and changes in employment that significantly alters an employee's future employment prospects such as demotion generally meet this standard; however, minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not rise to the level of an employment decision actionable under Title VII. Spears, at 853 citing Kerns, at 1016 and Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997). Thus, a transfer involving only minor changes in working conditions and no reduction in pay or benefits will not constitute an adverse employment action. Ledergerber, at 1144; see also, Spears, at 853 citing Ledergerber, supra.
Plaintiff's light duty reassignment to the Linen Room was nothing more than a short duration temporary reassignment in order to accommodate the restrictions the Personnel Health Service had imposed based upon plaintiff's complaints of back pain. This temporary transfer did not affect her grade level, her pay, or any other employment benefits that had existed prior to the transfer. Plaintiff fails to articulate in what manner her light duty assignment involved a material employment disadvantage. Assuming that she believed such an assignment was beneath her capabilities as a dental hygienist and perhaps, demeaning and embarrassing given her professional status[7], a loss of status or prestige does not constitute an adverse employment action under Title VII. Ledergerber, at 1144.
Plaintiff has set forth no affirmative evidence that she suffered the type of adverse employment action necessary to establish a prima facie case of discrimination under Title VII. Notwithstanding the fact that she was only working in the Linen Room for approximately one and one-quarter (1 1/4) days, even if she had completed her light duty assignment it was only seven (7) days in duration and did not involve any change in grade level, pay, benefits, or title. All plaintiff experienced was a minor temporary change in duties that plaintiff alleges increased her back pain[8] and caused her some embarrassment. Although plaintiff may have been disappointed by her light duty assignment, not everything that makes an employee unhappy is an actionable adverse action. Montandon v. Farmland Industries, Inc., 116 F.3d 355, 359 (8th Cir.1997) (citations omitted). Plaintiff has failed to establish an essential element of her prima facie case of discrimination regarding her light duty assignment.
As stated before, plaintiff has also failed to establish a prima facie case of race discrimination regarding her light duty assignment because she has presented nothing showing those white employees who allegedly received more favorable treatment (i.e., light duty assignment within *1117 Dental Services) were similarly situated in all relevant respects to her. Title VII prohibits defendant from treating Clark differently (in this case by reason of race) with respect to the terms, conditions, or privileges of her employment. She can prove such disparate treatment by showing with specific, tangible evidence that she was treated less favorably than other similarly situated white employees. Plaintiff claims that four other white individuals had previously been given light duty positions in Dental Services: Dr. Michael Cleary, Paul Kimball, Anne Schwartz, and Cathy Copeland. The evidence before this Court establishes that none of these individuals were similarly situated in all relevant respects to plaintiff.
Dr. Michael Cleary, a white male, had carpal tunnel syndrome surgery in June 1993 and October 1994. Dr. Cleary performed all of his regular job duties until his surgeries and took time off for several weeks following his surgeries by using his sick leave. Defendant's Exhibit 2EEOC transcript, testimony of Dr. Scheitler, pgs. 213, 275-78; Exhibit 3, pgs. 17-18. For a few weeks following his return from sick leave, Dr. Cleary performed all of his regular job duties except for tooth extractions. He continued to supervise the dental hygienists, dental assistants and other Dental Services employees; and continued to see and counsel patients, read x-rays and diagnose patients.
Dr. Cleary and plaintiff are not similarly situated. Dr. Cleary used his sick leave to take time off of work and his absence was not a light duty accommodation. Furthermore, he was able to perform all his regular duties except oneperforming extractions. By contrast, plaintiff never offered to take time off for her back injury by using her sick leave. Furthermore, plaintiff's light duty restrictions precluded her from performing most, if not all, of her regular hygienist duties. She could not continue working as a dental hygienist as a light duty assignment.[9]
Paul Kimball, a white male, was employed in Dental Services as a Senior Lab Technician when he suffered a stroke and was unable to use his hands. Mr. Kimball's physician recommended to Kimball that he apply for disability retirement which Kimball did do. However, a new Laboratory Technician needed to be trained and so arrangements were made for Kimball to return part-time for six (6) weeks to train a new technician. Kimball did not ask for a light duty accommodation and his brief return to Dental Services was at Dr. Scheitler's request to specifically train his replacement. Defendant's Exhibit 2EEOC transcript, testimony of Dr. Matteson, pgs. 189-91; testimony of Dr. Scheitler, pgs. 230-31; Defendant's Exhibit 3, pgs. 15-16. Plaintiff never asked for a light duty accommodation of part-time *1118 work (notwithstanding the fact that plaintiff's medical restrictions would still severely hamper the performance of her regular job duties), and Kimball's temporary part-time arrangement to work in Dental Services as a trainer of his replacement is not comparable to plaintiff's light duty position request.
Anne Schwartz, a white female, fell on an icy parking lot and injured her back. Ms. Schwartz never asked for nor received light duty assignment. Instead, she continued to perform all of her regular duties, including training dental students, by working half-days for several weeks. She accomplished this by using all of her sick and annual leave and having leave advanced to her. Her temporary part-time schedule also included an appropriate pay reduction. Defendant's Exhibit 2EEOC transcript, testimony of Dr. Scheitler, pgs. 225-29; Defendant's Exhibit 3, pgs. 16-17. Contrary to Ms. Schwarz situation, plaintiff never requested to work part-time at part-time salary, and never volunteered to use her sick and annual leave. Furthermore, unlike Ms. Schwartz, plaintiff's medical restrictions prevented her from performing the primary duties of her job. Ms. Schwartz was not similarly situated to plaintiff in all relevant respects.
Finally, Cathy Copeland, a white female, was a Dental Assistant and worked at the front desk in Dental Services. She was training in the front desk position and would fill in for Stephanie Adair as the Appointment Control Clerk when necessary. In 1995, Ms. Copeland injured her ankle.[10] Ms. Copeland took sick leave and also continued to work her regular two days a week at the front desk. Ms. Copeland never requested nor was placed on light duty assignment. Defendant's Exhibit 2EEOC transcript, testimony of Dr. Scheitler, pgs. 211-13, 217, 224; testimony of Dr. Matteson, pg. 197. Contrary to plaintiff, Ms. Copeland used her sick leave and requested and was allowed to continue working at the front desk. Her working at the front desk did not necessitate removing anyone from that position, and was simply a continuation of the fill-in work she had been doing. Furthermore, unlike plaintiff, Ms. Copeland did not have any medical restrictions which prevented her from performing the primary duties of her job. Ms. Copeland and plaintiff were not similarly situated in all relevant respects.
Plaintiff has failed to set forth any affirmative evidence showing that any one of the white employees she named was given light duty assignments in Dental Services. She has presented no evidence other than her unsubstantiated allegations in deposition. This is insufficient to rest her claim of disparate treatment on similarly situated white employees being given light duty assignments in Dental Services.
Plaintiff also contends that she was treated discriminatorily because light duty assignments existed in Dental Services in May 1994 which she could have performed. She contends that the June 7, 1991 internal VA memorandum regarding light duty assignments available at VAMC indicated that the two GS-3 positions of Receptionist and Appointment Control Clerk were designated as light duty positions in Dental Services, yet she was assigned to the Linen Room. The undisputed evidence before this Court is that the two positions in reality were already filled at the time in question. Furthermore, even if either position *1119 was still open, plaintiff was not qualified to fill either position.
In May 1994, Stephanie Adair was working as the Receptionist in Dental Services and Charles Washington was working as the Appointment Control Clerk in Dental Services.[11] Defendant's Exhibit 2EEOC transcript, testimony of Dr. Scheitler, pgs. 209-10, testimony of Dr. Matteson, pg. 179; Exhibit 3, pg. 19. Plaintiff has provided the Court with no evidence which suggests that defendant light duty assignment policy required it to remove persons from their jobs in order to accommodate plaintiff. Furthermore, plaintiff has failed to cite any federal law which mandates that persons must be removed from their jobs in order to accommodate another employee due to medical restrictions or conditions. In fact, analogous Americans with Disability Act (ADA)[12] cases clearly establish that such displacements are not encouraged. Under the ADA or the Rehabilitation Act[13], an employer is not required (among other things) to create a new position as an accommodation, bump another employee from a position in order to accommodate a plaintiff employee, nor is obligated to provide the accommodation requested or preferred by the plaintiff employee. Cravens v. Blue Cross and Blue Shield of Kansas City, 214 F.3d 1011, 1019 (8th Cir.2000); Joelson v. Department of Veterans Affairs, 177 F.Supp.2d. 967, 971-72 (D.N.D. 2001).
The undisputed evidence before this Court shows that plaintiff did not have the requisite skills to perform the jobs of Receptionist and/or Appointment Control Clerk. Plaintiff lacked the computer training or access required for the Appointment Control Clerk position. Ms. Adair and Mr. Washington had both the necessary computer training and access. Plaintiff did not have the requisite training to work as the Receptionist, a position which also functioned as the Daily Control Clerk. This position required training in the use of the intercom system, changing of work schedules, and medical triage (evaluation of emergency patients as to need of dental services and routing such patients to the appropriate dental personnel) which plaintiff did not have. Furthermore, Ms. Adair and Mr. Washington were trained to analyze veteran eligibility for dental benefits whereas plaintiff was not trained in these skills. Defendant's Exhibit 2EEOC transcript, testimony of Dr. Scheitler, pgs. 208-09; testimony of Dr. Matteson, pgs. 178-79; testimony of plaintiff, pgs. 82-86; Exhibit 3, pg. 19.
Plaintiff has failed to establish a prima facie case of intentional race discrimination in regard to her light duty assignment to the Linen Room. She has failed to set forth specific affirmative evidence which demonstrates that her temporary reassignment which did not affect her grade level, title, salary or benefits constituted an adverse employment action. She has further failed to set forth any affirmative evidence that any white employee in Dental Services was similarly situated to plaintiff and *1120 was given favorable treatment (i.e. given light duty assignment in Dental Services).[14]
Plaintiff has also failed to establish a prima facie case of retaliation under Title VII. Plaintiff contends that she was not given a light duty assignment in Dental Services because of her prior EEOC activity. Upon review of the evidence before this Court, plaintiff's claim of retaliation is meritless.
To establish a prima facie case of retaliation under Title VII, a plaintiff must show that 1) s/he engaged in a protected activity; 2) s/he suffered an adverse employment action; and 3) a causal connection existed between the protected activity and the adverse employment action. Curd v. Hank's Discount Fine Furniture, 272 F.3d 1039, 1041 (8th Cir.2001); Sowell v. Alumina Ceramics, 251 F.3d 678, 684 (8th Cir. 2001); Bradley v. Widnall, 232 F.3d 626, 632 (8th Cir.2000); Ghane, at 982-83. Plaintiff has failed to show, first, that she suffered an adverse employment action, and second, that the allegedly adverse employment action was causally connected to her prior EEOC activities.
For all the reasons already stated, the Court reaffirms its finding that the light duty assignment to the Linen Room was not an adverse employment action under Title VII.
Furthermore, plaintiff has failed to set forth any affirmative evidence that her light duty assignment to the Linen Room was in reprisal for her prior EEOC activities. It is undisputed that plaintiff has filed several EEOC complaints during her employment with defendant. In 1988 she filed a complaint alleging wrongful discharge based on race. This complaint was resolved in 1990 and plaintiff was reinstated to her GS-7 Dental Hygienist position.[15] In 1991, plaintiff filed an EEOC complaint concerning disparate treatment over pay.[16] In 1993, plaintiff filed two (2) EEOC complaints: May 1993disparate treatment over uniform allowances; June 1993discriminatory job performance appraisal. Apparently, these two complaints were settled between plaintiff and defendant. In 1994, plaintiff filed the EEOC complaint giving rise to her cause of action concerning her light duty assignment to the Linen Room.[17]
*1121 It is undisputed that Dr. Scheitler was aware of her prior EEOC activities; however, plaintiff has offered no affirmative evidence that this knowledge played any part in the decision to assign her to a light duty position in the Linen Room. It is undisputed that Ms. Brockmann alone made the decision to assign plaintiff to the Linen Room. Defendant's Exhibit 2 EEOC transcript, testimony of Brockmann, pgs. 295-96. She made this decision after calling departments on the June 7, 1991 memorandum looking for any available light duty position that would accommodate plaintiff's medical restrictions. Furthermore, at the time she chose the Linen Room, she was unaware of plaintiff's prior EEOC activities. Defendant's Exhibit 2EEOC transcript, testimony of Brockmann, pg. 296. Finally, as to the affidavit that plaintiff gave in another employee's EEOC matter, plaintiff gave this affidavit after she had already been assigned to the Linen Room. So, any knowledge that Dr. Scheitler gained of plaintiff's affidavit was after Brockmann had already decided to place plaintiff in the Linen Room.
Plaintiff contends that she has established causation simply by the existence of her prior EEOC complaints in 1993. See, Plaintiff's Statement of Uncontroverted Material Facts (# 29), pg. 2, ¶ 5. Clark must do more than simply point to the temporal connection between the filing of her 1993 complaints and the defendant's allegedly adverse employment action of assigning her light duty in the Linen Room. Generally, more than a temporal connection between the protected activity and the adverse employment action is required to create a genuine issue of material fact. Sowell, at 685 (citations omitted); Bradley, at 633 (citations omitted); Ghane, at 983 (citations omitted). The nine-month lapse of time between plaintiff's 1993 EEOC complaints and the alleged retaliatory act of assigning her light duty in the Linen Room is too long for the incidents to be causally-related; especially, in light of the lack of any other evidence to support a finding of retaliatory motive on the part of the defendant. See, Curd, at 1041 (holding that plaintiff fired one month after sending e-mail to supervisor alleging sexual harassment failed to establish causal link without more evidence than temporal proximity); Sowell, at 685 (holding that plaintiff's resignation seven months after an alleged retaliatory act failed to establish causal link without more evidence than temporal proximity). Conclusionary allegations of retaliation are not sufficient to establish a prima facie case of retaliation under Title VII.

Case No. 4:01CV867ERW
Plaintiff began her employment with defendant in 1984 as a GS-7 Dental Hygienist.[18] Plaintiff was discharged from her position as a GS-7 Dental Hygienist on February 24, 1987. In 1988 plaintiff filed an EEOC complaint alleging that her firing was based on race and in retaliation for prior EEOC activity.[19] On December *1122 2, 1990, upon a final EEOC decision finding race discrimination in connection with the plaintiff's discharge, plaintiff was reinstated to her prior position as a GS-7 Dental Hygienist. The EEOC had ordered the VAMC to, among other things, reinstate the plaintiff to her former position as GS-7 Dental Hygienist at the St. Louis facility (effective February 24, 1987, the date of her discharge), and to issue a check to plaintiff for the appropriate backpay and other benefits due. Defendant's Exhibit 8Agency FAD, pg. 3.
In December 1997, plaintiff spoke with Laura Kroupa, Director of Primary Care at VAMC about a promotion to GS-8 Dental Hygienist. Ms. Kroupa discussed the matter with personnel in the Human Resources department and found that plaintiff did not meet the qualifications for a GS-8 Dental Hygienist position. Defendant's Exhibit 13Sworn Statement of Laura Kroupa, dated February 4, 1999, pgs. 6-7; Defendant's Exhibit 8Agency FAD, pgs. 4-5. The two qualifications that plaintiff did not meet for promotion to a GS-8 Dental Hygienist position are: 1) an increased independence of practice; and 2) teaching dental hygienist students. Plaintiff was not promoted to a GS-8 Dental Hygienist position.[20]
On March 25, 1998 plaintiff filed an EEOC complaint alleging race discrimination and retaliation in connection with her failing to be promoted to GS-8 Dental Hygienist. She also alleged race discrimination and retaliation in connection with her reinstatement back in 1990. Plaintiff alleged that when she was reinstated in 1990 she should have been placed in a newly authorized dental hygienist position under Title 38, Expanded Function Dental Auxiliary (EFDA) which would have provided her with increased pay and benefits. She contended that two white female dental hygienists were hired in 1990 under Title 38 as EFDAs.[21]
In 1990 (prior to plaintiff's reinstatement), the VAMC requested and was given permission by defendant to offer new qualified individual applicants higher-paying positions under Title 38. Such an applicant had to have an additional year of training beyond the standard training for dental hygienist or dental assistant. Such additional training allows the individual certain quasi-surgical privileges such as placing of dental fillings like amalgam, composite, rubber dam, and the constructing of temporary crowns. Defendant's Exhibit 9EEOC appellate decision, pg. 3; Defendant's Exhibit 14Sworn Statement of Dr. Lawrence Scheitler, pgs. 6-7. Some EFDAs are qualified to give local anesthesia and make dental impressions. Defendant's Exhibit 14Sworn Statement of Dr. Scheitler, pg. 7. Dental hygienists are not qualified, under most circumstances, to perform the additional duties of an EFDA. Defendant's Exhibit 14Sworn Statement of Dr. Scheitler, pg. 7.
Anne Schwartz was hired effective July 1, 1990 as a GS-8 Dental Hygienist.[22] She had been hired from a local community college where she had been a professor holding a master's degree in dental hygiene. Defendant's Exhibit 14Sworn Statement of Dr. Scheitler, pg. 7. Ms. Schwartz had advanced training in periodontics and part of her duties were to train *1123 dental students as they rotated through Dental Services via local college dental programs. Ms. Schwartz left her employment in 1993 when the training programs for students were phased out. There have been no GS-8 Dental Hygienist positions filled since Ms. Schwartz departure in 1993. Defendant's Exhibit 8Agency FAD, pgs. 6-7; Defendant's Exhibit 12 Sworn Statement of Marie Lewis (supervisory employees relations specialist), pgs. 5-6; Defendant's Exhibit 16Service Record Card for Anne Schwartz.
Rustie Newsom was hired effective July 1, 1990 as a GS-7 Dental Hygienist. Defendant's Exhibit 14Sworn Statement of Dr. Scheitler, pg. 8. She had an associate's degree in dental hygiene and extensive experience in private practice. Ms. Newsom left her employment with the VAMC on June 24, 1996. At the time of her departure, Ms. Newsom was still a GS-7 Dental Hygienist. Defendant's Exhibit 16Service Record Card for Rustie Newsom.
Although authorized, there have been no EFDA personnel attached to Dental Services since 1990, and there have been no GS-8 dental hygienists attached to Dental Services since 1993.
From 1994 to 1998 plaintiff did not file any EEOC complaints regarding her employment as a GS-7 Dental Hygienist at the VAMC.
After a careful review of the parties pleadings and the evidence before the Court, the Court finds that plaintiff has failed to establish a prima facie case of race discrimination under Title VII for her failure-to-promote claim, and in addition, has failed to make a prima facie case of retaliation under Title VII.[23]
To establish a submissible failure-to-promote case under Title VII, plaintiff Clark must show 1) that she is a member of a protected group; 2) that she was qualified for and applied for a promotion for an available position; 3) that she was rejected for that position; and 4) a similarly situated employee, outside the protected group, was promoted instead. Dotson v. Delta Consolidated Industries, 251 F.3d 780, 781 (8th Cir.2001); Rose-Maston, at 1109.
Plaintiff contends that upon her reinstatement in 1990, she should have been converted to a Title 38 EFDA position as a dental hygienist. The undisputed evidence before the Court establishes that Clark was reinstated pursuant to an EEOC order directing her reinstatement to her previous position from which she had been discharged. That position was a GS-7 Dental Hygienist position. The EFDA positions were for newly-hired employees who met certain requirements regarding additional training. Plaintiff was not a newly-hired employee nor did she possess the additional required training for an EFDA position.[24] Defendant's Exhibit 8 *1124 Agency FAD, pg. 13; Defendant's Exhibit 9EEOC appellate decision, pgs. 3-4; Defendant's Exhibit 12Sworn Statement of Marie Lewis, pgs. 6-7, 9; Defendant's Exhibit 14Sworn Statement of Dr. Scheitler, pg. 9.
In 1998 when plaintiff sought a GS-8 position, none were available. Defendant's Exhibit 18. Even if a GS-8 position were available, plaintiff was not qualified to fill the position. She did not meet two critical criteria: independent practice and education of dental students. Defendant's Exhibit 13Sworn Statement of Laura Kroupa, pgs. 6-7; Defendant's Exhibit 17.
Other than unsubstantiated statements made at her deposition, plaintiff offers no evidence of the qualifications necessary for a GS-8 Dental Hygienist position or an EFDA position. More importantly, she fails to offer any evidence of her own qualifications. She instead only makes conclusionary assertions that she was qualified for either of these positions. This is insufficient to make a prima facie case for discriminatory failure-to-promote. See, Rose-Maston, at 1110.[25]
Plaintiff has also failed to establish a prima facie case of retaliation under Title VII. Plaintiff contends that she was not promoted to a GS-8 position in March 1998 because of her prior EEOC activities. Upon review of the evidence before this Court, plaintiff's claim of retaliation is meritless.
To establish a prima facie case of retaliation under Title VII, Clark must show that 1) she engaged in a protected activity; 2) she suffered an adverse employment action; and 3) a causal connection existed between the protected activity and the adverse employment action. Curd, at 1041; Sowell, at 684; Bradley, at 632; Ghane, at 982-83. Plaintiff has failed to set forth any affirmative evidence that the denial of a promotion to GS-8 was causally connected to her prior EEOC activities.
At the time of the denial of a promotion to GS-8, Ms. Kroupa had become aware in 1997 of the settlement of plaintiff's 1993 EEOC complaints. This was her only knowledge of plaintiff's EEOC activities prior to the filing of the 1998 EEOC complaint. Defendant's Exhibit 13Sworn Statement of Laura Kroupa, pg. 7. Both Ms. Lewis and Ms. Kroupa deny that plaintiff's prior EEOC activities played any part in the denial of a promotion to GS-8 (or to an EFDA position). Defendant's Exhibit 12Sworn Statement of Marie Lewis, pg. 10; Defendant's Exhibit *1125 13Sworn Statement of Laura Kroupa, pg. 8.
Once again, plaintiff contends that she has established causation simply by the existence of prior EEOC activity, in this case, the 1997 settlement of her 1993 EEOC complaints. See, Plaintiff's Statement of Uncontroverted Material Facts (# 29), pg. 5. Clark must do more than simply point to the temporal connection between the 1997 settlement and the defendant's alleged adverse employment action of denying her a promotion to GS-8. Generally, more than a temporal connection between the protected activity and the adverse employment action is required to create a genuine issue of material fact. Sowell, at 685 (citations omitted); Bradley, at 633 (citations omitted); Ghane, at 983 (citations omitted). In light of the lack of any supporting evidence of retaliation, both the five (5)-year time lapse between the 1993 EEOC complaints and the 1998 denial of a promotion, and the one (1)-year time lapse between the 1997 settlement (of the 1993 EEOC complaints) and the 1998 denial of a promotion are too tenuous to support a finding of a causal connection between plaintiff's protected activities and the alleged adverse employment action. See, Curd, at 1041; Sowell, at 685. Conclusionary allegations of retaliation are not sufficient to establish a prima facie case of retaliation under Title VII.
In the event plaintiff had established a prima facie case of race discrimination and retaliation in connection with her light duty assignment to the Linen Room and/or not being promoted to an EFDA or GS-8 position, summary judgment to the defendant in both causes of action would still be appropriate. In both cases, the defendant has clearly articulated a nondiscriminatory, legitimate reason for the allegedly adverse employment action. She was given a light duty assignment in the Linen Room because there were no light duty assignments available in Dental Services, and furthermore, the ones plaintiff believed were available, she was not qualified to fill. She was placed in a GS-7 Dental Hygienist position upon her reinstatement in 1990 pursuant to an EEOC order. Furthermore, she was not qualified to be placed in an EFDA position upon her reinstatement or in 1998; nor was she qualified to be placed in a GS-8 Dental Hygienist position upon her reinstatement or in 1998.
Once the defendant satisfied his burden of articulating a nondiscriminatory, legitimate reason for the alleged adverse employment action, the burden shifted to Clark to demonstrate that said reasons (in both cases) were pretextual and that race and/or impermissive retaliation was the determinative factor for the actions taken. Clark has failed to put forth any evidence raising a reasonable inference (in either case) that the reasons given were pretextual. She has offered no evidence whatsoever that race played any role in either case or that her prior EEOC activities played any role in either case. She has failed to demonstrate (in both cases) that similarly situated white employees were given favorable treatment. Employment decisions that are unfair or can even be considered the result of poor business judgment are not actionable under Title VII. Hill v. St. Louis University, 123 F.3d 1114, 1120 (8th Cir.1997) (Title VII does not sit as a super-personnel department second-guessing a business personnel decision and does not prohibit employment decisions based on poor job performance, erroneous evaluations, personality conflicts or even unsound business practices). Furthermore, attacking the credibility of certain witnesses in connection with the defendant's articulation of legitimate, nondiscriminatory reasons for the alleged adverse employment actions taken, and arguing *1126 that she can show this at trial[26], does not create a genuine issue of material fact as to pretext. Once the movant has supported his or her motion, however, the opponent must affirmatively show that a material issue of fact remains in dispute and may not simply rest on the hope of discrediting the movant's evidence at trial. Barge, at 260 quoting Matter of Citizens Loan & Savings Co., 621 F.2d 911, 913 (8th Cir.1980). No trialworthy issue of pretext exists as to plaintiff's race discrimination and retaliation claims. Clearwater v. Independent School District No. 166, 231 F.3d. 1122, 1127-28 (8th Cir.2000) quoting Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 779 (8th Cir.1995).
For all of the above reasons, summary judgment shall be granted to the defendant in both cases 4:01CV218SNL and 4:01CV867ERW as a matter of law.

ORDER
In accordance with the memorandum filed herein this date,
IT IS HEREBY ORDERED that defendant's motion for summary judgment (# 22) be and is GRANTED. Judgment is hereby entered for defendant and against plaintiff on the merits of both complaints (4:01CV218SNL and 4:01CV867ERW). This consolidated case is hereby DISMISSED and removed from the Court's trial docket of March 25, 2002. No further action shall be taken in this case.
NOTES
[1] A majority of the facts in both cases are directly taken from transcripts and final agency decisions (FADs) generated through hearings before the EEOC Administrative Law Judge. The record before the ALJ, including the sworn testimony of the plaintiff and other witnesses is competent and admissible evidence before this Court. Plaintiff has not objected to these exhibits, in fact, she herself cites to them. Also, before this Court for consideration are the depositions of plaintiff, Marie E. Lewis (Supervisory Human Resources Specialist with the VAMC), Laura Kroupa (Director of Primary Care at VAMC), and Dr. Lawrence Scheitler (Chief of Dental Service during the relevant time-period), as well as other documents. Although, plaintiff did not file any exhibits with her responsive pleading, in consideration of her pro se status, the Court reviewed the documents she had attached to her original complaints.
[2] The afore-mentioned facts regarding plaintiff's present employment status and her supervisor during the relevant time-period is applicable to Case No. 4:01CV867ERW.
[3] In her responsive pleading plaintiff states that [p]laintiff never asked Dr. Lawrence Scheitler to assign her to a light duty assignment within the Dental Service, or outside of the dental service. Document # 29, pgs. 1-2. Plaintiff doesn't dispute the fact that she went to the Personnel Health Service on May 2, 1994 complaining of back pain. She doesn't dispute the existence of the light duty notice or objects to the restrictions noted on the notice. She doesn't dispute the fact that when she gave the notice to Dr. Scheitler she understood it was informing him of a need to provide plaintiff with a light duty assignment because she could not perform her regular job duties.
[4] Evidently, plaintiff's light duty assignment in the Linen Room would primarily consist of folding washclothes and other light weight articles.
[5] Plaintiff's and Gunter's contradictory testimony regarding plaintiff's work environment on May 4, 1994 is not material to the resolution of the summary judgment motion. Regardless of what she was supposed to be doing in the Linen Room, plaintiff's contention appears to be she should have been allowed to simply do her regular job to the best of her ability regardless of the restrictions or be placed in a light duty assignment in Dental Services.
[6] Although not relevant to any factual issues present, it appears from the transcript testimony of plaintiff and Gunter, that plaintiff arrived late to work in the Linen Room (approximately around 8:15 a.m.) and stayed until around 9:30 a.m. She then was told to report to Personnel regarding an affidavit she was filing in an EEOC case filed by someone else. According to Gunter, he did not see her from 9:30 a.m. until around 3:30 p.m. when he saw her exiting an elevator. He did not know what she had been doing or where she had been during this time-period. Plaintiff testified that she spent the entire day going back and forth to Personnel, the Linen Room (not performing any work in the Linen Room during this time), and the Dental Services area before going to Personnel Health Services and then leaving for home.
[7] Neither plaintiff's complaint nor any papers she has filed identify how the assignment to the Linen Room constituted a material change in the terms and conditions of her employment; however, in the ALJ's final agency decision (FAD) on this matter, the ALJ refers to plaintiff's contention that such a reassignment was beneath her capabilities and was demeaning and embarrassing. Defendant's Exhibit 3, pg. 11.
[8] In her testimony before the ALJ plaintiff claimed that she left the Linen Room and eventually made her way to the Personnel Health Service on May 5, 1994 because working in the Linen Room made her back pain worse. Plaintiff has submitted no other evidence to substantiate this testimony such as a copy of a medical log for May 5, 1994, a copy of any medical report on plaintiff from the Personnel Health Service for May 5, 1994, or an affidavit from Personnel Health Services staff regarding plaintiff's visit on May 5, 1994.
[9] Plaintiff appears to make a convoluted argument that the light duty notice from Personnel Health Services imposing a myriad of restrictions did not prevent her from performing her regular job duties nor did they prevent Plaintiff from using her better judgment during treatment of patients. Document # 29, pg. 2. The undisputed evidence before the Court is that plaintiff's regular duties consisted of extended periods of standing and stooping, lifting patients in and out of wheelchairs, twisting her back to reach over patients to perform certain dental examinations and cleaning, and maneuvering heavy x-ray equipment (including placing an extremely heavy protective vest on patients) when necessary. Plaintiff appears to contend that defendant should have ignored the restrictions on physical movement and lifting and allowed the plaintiff to continue her work as a dental hygienist as she saw fit. She offers absolutely no authority or legal argument which would absolve defendant from liability for disregarding medical restrictions and allowing an employee to continue performing regular job duties while in pain and discomfort, and possibly rendering further serious injury to the employee. Such a proposition from the plaintiff is not tenable.
[10] Since plaintiff's claim regarding her light duty assignment arose prior to Ms. Copeland's injury and her alleged light duty assignment, the Court finds that any comparison is immaterial. However, since plaintiff includes Ms. Copeland in her list of white employees given favorable light duty assignment, the Court will address the issue as to whether Ms. Copeland was similarly situated to plaintiff at the time of Ms. Copeland's injury.
[11] The undisputed evidence before the Court is that Drs. Scheitler and Matteson had been discussing for some time the need to update the June 7, 1991 memorandum regarding available light duty positions. In fact, a new memorandum was issued on February 25, 1995 which correctly noted that no light duty positions were available in Dental Services. Defendant's Exhibit 7. The fact that the information contained in the 1991 memorandum was no longer correct three (3) years later in 1994 is not unreasonable and certainly fails to show any discriminatory intent on the part of defendant regarding the unavailability of light duty positions in Dental Services at the time of the plaintiff's light duty request.
[12] 42 U.S.C. § 12112 et. seq.
[13] 29 U.S.C. § 701 et. seq.
[14] As noted before, plaintiff's response to the summary judgment motion is a multipage document of purported Uncontroverted material facts. This document contains mainly unsubstantiated allegations and is unaccompanied by any memorandum of law or evidentiary exhibits. Such a document is insufficient to raise any genuine issue of material fact. This Court does not have an obligation to plumb the record in order to find such issues. Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir.1996). A plaintiff is required to designate specific facts creating a triable controversy. Barge, at 260. A district court is not required to speculate on which portion of the record the non-moving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Barge, at 260 quoting White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir.1990). The Court reviewed the papers attached to the plaintiff's complaints as a courtesy not as an analytical review of alleged evidence in support of the plaintiff's claims. It is the plaintiff's burden to set forth specific affirmative evidence in support of her claims, not the Court's burden.
[15] Plaintiff's reinstatement as a result of her 1988 EEOC complaint is part of the basis for the second cause of action presently before the Court.
[16] It is unclear from the evidence before the Court the exact resolution of this complaint.
[17] As will be discussed later, plaintiff filed another EEOC complaint in 1998 regarding her reinstatement in 1990 and defendant's allegedly discriminatory refusal to promote her in March 1998 to a GS-8 Dental Hygienist position. This EEOC complaint gave rise to Case No. 4:01CV867ERW.
[18] This is one of several discrepancies existing between testimony of the plaintiff and the agency decisions on her EEOC complaints. In her deposition plaintiff testified that she was first hired in 1986, Defendant's Exhibit 11Deposition of Hazel Clark, dated February 3, 1999, pg. 6; however, at the EEOC hearing in 1995, plaintiff testified that she had been hired in 1983, Defendant's Exhibit 2 EEOC transcript, testimony of plaintiff, pg. 13. However, the FAD entered on December 16, 1999 regarding the EEOC complaint giving rise to the instant action, found that plaintiff began her employment on January 11, 1984. Since the FAD's finding is based upon an evidentiary record, including plaintiff's employment file, the Court determines that plaintiff's employment with defendant began in 1984.
[19] The record before this Court does not evidence any EEOC complaints filed by the plaintiff prior to 1988.
[20] Evidently the decision not to promote plaintiff was communicated to her on or about March 13, 1998.
[21] Rustie Newsom and Anne Schwartz.
[22] Although Defendant's Exhibit 8Agency FAD, pg. 4, n. 1 states that AS was hired effective July 1, 1990, at a GS-7, step 10 salary rate, the majority of the evidence before the Court indicates that this is in error and that in fact, Ms. Schwartz had been hired as a GS-8 Dental Hygienist.
[23] Plaintiff contends that she also has alleged age discrimination claim in connection with her failure-to-promote claim. A review of the evidence before this Court clearly shows that at no time did any of the plaintiff's EEOC complaints, including the one filed in 1998 giving rise to this cause of action, allege age discrimination under the ADEA. At no time did either the agency review or the EEOC review include an age discrimination claim. Since plaintiff has failed to exhaust her administrative remedies as to an age discrimination claim, the Court will not consider same.
[24] In her response to the instant summary judgment motion, plaintiff contends that she is a graduate of a dental auxiliary education program that included education and training in expanded functions which is accredited by the Council on Dental Education of the ADA (American Dental Association), Commission on Dental Accreditation. Plaintiff's Statement of Uncontroverted Material Facts (# 29), pg. 4. Plaintiff provides this Court with no evidence to substantiate this statement. She fails to identify this program or where and when she took this program and graduated from it. She has provided no documentation regarding the existence of this program or her participation in it. She then states that she has an active, current, full and unrestricted license as a dental hygienist from the State of Missouri. Plaintiff's Statement of Uncontroverted Material Facts, pg. 4. Once again, other than this statement, plaintiff offers this Court no objective documentary evidence to support the statement.
[25] Plaintiff further fails to show that either Ms. Schwartz or Ms. Newsom were similarly situated to her. Firstly, as already noted, Ms. Schwartz was hired as a GS-8 Dental Hygienist in 1990 because of her advanced education and ability to train dental students. After she left in 1993, no other person has been hired or promoted to a GS-8 Dental Hygienist position. When plaintiff was rejected in 1998 for a GS-8 position, no other similarly situated person outside the protected group was promoted instead. Secondly, as already noted, Ms. Newsom was hired in 1990 as a GS-7 Dental Hygienist, and when she left in 1996, she was still a GS-7 Dental Hygienist. Finally, the evidence before the Court shows that both Ms. Schwartz and Ms. Newsom were Title 5 employees, not Title 38 employees. Clark's only evidence of their alleged EFDA status are hearsay conversations she testified to at her deposition. Even assuming they did perform EFDA duties, the undisputed evidence before the Court is that they were not similarly situated to the plaintiff for the reason that they had superior credentials to the plaintiff.
[26] Plaintiff's Statement of Uncontroverted Material Facts (# 29), pg. 4, ¶ 9.